Good morning, Your Honor, and may it please the Court, Deborah Gonzalez from the Federal Public Defender's Office on behalf of Appellant Israel Cabrera-Ramirez. I plan to reserve two minutes for rebuttal and I'll keep an eye on my clock. The District Court was wrong to deny Mr. Cabrera's motion to dismiss after he unfairly lost his one chance to keep his was deported from his home of 30 years. Unless the Court prefers I start elsewhere, this morning I plan to first talk about Ms. Roman's ineffective assistance of counsel before the immigration judge and then turn to the matter of prejudice. When a lawful permanent resident with criminal history is applying for a discretionary grant of cancellation of removal, his testimony about his criminal history is often pivotal to the IJ's decision. It is therefore incumbent upon his attorney, meaning it is baseline practice, not best practice, but baseline practice for that attorney to adequately prepare him to testify about that criminal history. An attorney does that by collecting the criminal history records, by understanding them, by using them to prepare her client to testify, and by bringing them to court. At the very rock bottom, an attorney in this situation has to be able to understand the rap sheet provided to her by the DHS attorney. But Ms. Roman couldn't even do that, and she didn't take these other actions either. And this all prejudiced Mr. Cabrera, whose testimony the record shows would have been more truthful and accountable had he seen these documents before his hearing. Counsel, let me interrupt you there. Didn't the IJ find him credible though? The IJ did find him credible, Your Honor. So where's the harm? Well, the prejudice is that the IJ then used his testimony, which he did find eventually reached near the truth, to deny him a cancellation of removal as a matter of discretion because of the way that he minimized and spoke about his criminal history. So it wasn't the credibility finding that's prejudicial. It's the way that the IJ was so troubled, those were his words, by the clients, by Mr. Cabrera's testimony. And in preparing for today's hearing, I went back to reread the IJ's decision. One thing I think is notable, first is the IJ's words. He said, you know, the criminal history weighed heavily against a grant, but especially when considered in conjunction with Mr. Cabrera's testimony about that criminal history. And then he spent... So I guess my question is, though, I mean, I understand, I saw and I can understand why, for example, saying you were only convicted of a misdemeanor, you were only convicted... He wasn't. He had felony convictions, but his... The way he testified about, for example, that car theft, that was on him. I mean, he knew what he did. He knew his involvement. He minimized it. Same thing with his sobriety. He knew when he was, you know, last convicted of anything to do with, you know, drugs. So how does that part fall into his prejudice? Respectfully, Your Honor, Mr. Cabrera was testifying about 10 convictions, multiple arrests, things that happened over the course of 14 years, during which time he was using meth almost daily. And so, you know, this was not a situation where he was testifying to, you know, one event that had happened a month ago. This was a situation where he needed to be reminded of some of these things. And, you know, also preparing for today, I went back and the testimony to me, at least, that he was confused about a lot of things. And in particular, there were times where he testified in ways that weren't minimizing, but were actually more harmful to him. So I would point the court to ER 306, where he's testifying about his 2012 DV, domestic violence arrest. He says, quote, I served three months for it. I can't really recall the date, but I didn't get charged with it or convicted, as you say. You know, this is somebody who, despite the number of convictions he had, was actually, I believe, pretty unsophisticated about these legal terms and what they meant. So he was confused about whether he served time for that. When he's discussing this issue with the BB gun, the brandishing of the false firearm, he said, quote, at ER 236, it got dismissed or down to a misdemeanor. He doesn't really understand what the difference is. And so the IJA and the BIA had the record. They could read what it actually was, right? And it's a pretty extensive record. Aside from counsel, I agree with you that counsel was deficient in not preparing her lawyer, and I'm preparing her client well on this, but his, he had like a history, an extensive drug history, and then corporal injury on his spouse, and receiving stolen property convictions. And I'm just wondering that given such a heavy record that is not in dispute, right? No, it's not, Your Honor. Why the IJA, regardless of the counsel's deficient performance, wouldn't have still exercised their discretion the same way? Well, as the court knows, Mr. Cabrera, to win this motion only needs to show that it was plausible that the judge may have granted. And as the court probably also knows, I'm sure, this is a balancing of the equities. So it's up to the IJA's discretion. If the court looks at what the IJA said about the testimony, and the point that I was trying to get to Judge Alba was, in addition to saying how troubled he was about the testimony, the IJA then spent four single-spaced paragraphs talking, dissecting all of the things that he found problematic with this testimony. So I think on this record, it is plausible that the IJA may have granted his discretion to grant the cancellation of removal application had Mr. Cabrera testified differently. You know, part of what the BIA has said is, in these contexts, is that immigration judges need to look at whether, in the majority of cases where someone has a criminal history, whether that person has shown rehabilitation. And if Mr. Cabrera had testified differently, he may have well done that. At least it's plausible that he may have. If we assume there was ineffective assistance, and that it's plausible that the IJA might rule differently, can you cite me to a Ninth Circuit case that even holds that ineffective assistance qualifies as a denial of opportunity for judicial review under D-2? Yes, Your Honor. And I may have to get the cites from my reply brief, which I will do while I'm sitting down. But there are several cases from this court. There is, I believe, Lopez-Chavez was an ineffective assistance of counsel case. There is a footnote from, I think it's Gonzalez v. Lobos, but I'll have to confirm. And at least one or two other cases where this court has talked about ineffective assistance of counsel being able to deprive someone of the due process that they're afforded in immigration removal proceedings. But I will look for that while I'm sitting down, Your Honor. I just wanted to say also, you know, I wrote in the motion why it's difficult to find comparable cases in this type of case, because this court does not have jurisdiction to review the denial or the grant of a discretionary, you know, decision on a cancellation of removal application. But I did find some BIA decisions from 2005 and 2007 while I was preparing for this hearing, where clients with, you know, extensive criminal history and drug use, the BIA affirmed the IJ's grant of cancellation of removal. That's Inree Michael-Webster, 2005, Westlaw, 110-4532. I may ask you to submit or even give to the clerk a note with the subsequent cases that are not in your brief, but I think it's very important that you reserve your time now and then come back prepared to answer Judge Brown's question. Will do. Thank you, Your Honor. Good morning, Your Honors. May it please the court. Amy Pomerantz on behalf of the United States. The district court's decision in this case should be affirmed because defendant cannot and did not satisfy the requirements necessary to prevail on his collateral attack on his 1326 discharge. And I'd like to begin with D3, which is kind of the heartland of this case and what my So under D3, to make that showing, defendant must prove that his due process rights were violated and that he suffered prejudice, two prongs. And neither is satisfied here. The due process claim here is based on IAC, as we know. And in a civil immigration proceeding, an IAC claim is governed by the Fifth Amendment, not the Sixth Amendment. And the question then, for our purposes, is whether the proceeding was so fundamentally unfair that he was prevented from reasonably presenting the case. And here, it was not. The record in this case shows the defendant had a full and fair opportunity to present his case. His lawyer built the case for cancellation of removal that we all agree was based on a balancing of the equities. He did not concede, or his lawyer conceded removability. There was no issue there. And they conceded that he was statutorily eligible for cancellation of removal. So at this hearing, the only issue was going to be the balancing of equities. And his lawyer built a strong case centered around his positive equities. She put a lot of evidence into the record. If you look at ER 159 and 160, that's the exhibit list. She brought on his mother to testify, his father, his brother. She called a substance abuse counselor who testified about his willingness to get treatment. She submitted letters into the record supporting his good moral character. She had defendants on the stand testify, explain the criminal charges in his own words. And when she thought the FBI rap sheet might contain some inaccuracies, that there might be some mitigating evidence or some favorable facts that perhaps she had overlooked, what did she do? She requested the underlying arrest reports. She sought a continuance. She made sure that she had time to review them. And then she put her client back on the stand on redirect and asked him questions again. And as the I.J. eventually pointed out, which I think some of your Honors pointed out, the I.J. ultimately found the defendant was credible. He found that based on all the testimony, let me get the exact words here, he arrived at, believe the testimony record, arrived near the truth based on full questioning and the confronting reports. And so given how she handled his criminal history, the records, all of this, I don't think we can fairly say the defendant was deprived of due process in the immigration proceedings. He had actually reasonably competent counsel. And one other point that I would like to make, going to some of Judge Wardlaw's questions about the preparation, and I think this bears a little bit of emphasis. The district court found at ER 15 made a factual finding, reviewable for clear error, that there was really no evidence that his testimony was caused by the quality of his preparation. There's no affidavit in the record, no declaration, talking about how she actually prepared him, right? All we know is how he testified on the stand. And so to the extent that she found that he engaged in some sort of self-help measures to try to mitigate his own, explain away his own convictions, well, we cannot actually say on this record that any prejudice that was caused, that was caused by counsel's lack of preparation, right? There's just not evidence. Would that have been the government's burden, though, to go and seek that, an affidavit like that from Ms. Roman? Am I on the right case? From his counsel at the IJ proceeding? No, Your Honor. I mean, well, on a 1326 posture, defendant has the burden of satisfying all three elements of 1326D. And so it is his burden to show the counsel is deficient. Me is that, is that the issue that Judge Brown raised, which is did any of counsel's deficient performance deprive him of the opportunity for judicial review? So pivoting to 2D2, because I think that is a thorny question. And let me just say that this court need not reach that in this case, because if you find there was no deficient performance, if you find there was no prejudice, you don't get that. Right. So suppose I'm fine. Suppose we find that. Okay. Defendant also cannot satisfy D2 in this case. His clout or attack fails. And here's why. I think it's helpful to situate this in the statutory language. So what D2 says exactly is that the deportation proceedings at which the order was issued improperly deprived him of the opportunity for judicial review. And so the operative phrases here are first he has to be improperly deprived of the opportunity. And importantly, satisfaction of D2 requires a structural deprivation. It requires a procedural defect, right? The proceedings themselves have to be what deprived him of any opportunity for judicial review. And so to the extent that his argument is that any IAC at the IJ level automatically sort of forecloses the opportunity for judicial review, well, that cannot be right for a couple reasons. Number one, that argument runs headlong into Palomar-Santiago and Portillo-Gonzalez. That's this disguised excusal argument. Essentially what we're saying is that if that was right, if any IAC at the IJ level could foreclose judicial review, then all you'd have to show is IAC at the IJ level, right? That would collapse D2 and D3 in contravention of Palomar-Santiago, essentially resurrect that pre-excusal case law under a different name. It's also wrong as a matter of substantive immigration law because IAC at the IJ level does not necessarily by itself foreclose judicial review. There's mechanisms. I mean, of course, this Court knows that. This Court has adjudicated. There's a whole body of case law adjudicating IAC claims in immigration proceedings. So the fact that there was some IAC is not enough to satisfy D2. And to put a finer point on this, Your Honors, it's not that IAC at the IJ level can never satisfy D2, but the point is that it comes down to causation and it comes down to the mechanism. You have to ask how did this error deprive him of the opportunity of judicial review? So if there was an error that went to the appellate process, then that might theoretically, there might be a narrow circumstances where IAC could potentially satisfy D2, but it certainly does not here based on the claims alleged. And I would push back a little bit on Lopez-Chavez, which I think my colleague is about to stand up and talk about. Lopez-Chavez is certainly good law with respect to its D3 holding, but it is arguably not good law anymore following Palomar-Santiago as the D2 holding, because essentially the Court found fundamental unfairness under D3 and said, well, for the same reasons the IAC foreclosed the judicial review under, administrative review under D1 and D2. And that sort of excusa language is what Palomar-Santiago forbids. Now, it may be that on the specific facts of Lopez-Chavez, there were certain procedural quirks of that case that maybe on a different, had the record been made a little bit differently below, maybe there would be a cognizable deprivation of the opportunity for judicial review in that case. But again, the IAC, for that to be cognizable as a D2, to satisfy D2, it has to be a procedural defect. The proceedings themselves have to be what foreclosed the opportunity for judicial review. And this case here, it's really not even close. Certainly, the criminal history-based sort of IAC claims don't satisfy D2 for the reasons I've discussed. They advance some argument of how, you know, his lawyer didn't file an appellate brief the Ninth Circuit. But that also cannot satisfy D2 for several reasons. Number one, well, we know he had the opportunity. Why? Because he filed a petition himself. Like, the opportunity was there. He started to take it. And the fact that he didn't follow through and file the brief, well, that's not a D2. That doesn't satisfy D2. And to the extent that, I mean, even if there was IAC in that if his counsel had told him she was going to file an appellate brief and she didn't, which to be clear is not supported by this record, and I would advise the Court to go back and look at ER-72, that's not even what he says. There's no evidence she was even supposed to be representing him on appeal. But even if that was IAC, it still wouldn't satisfy — maybe it would satisfy D3. It wouldn't satisfy D2, though. Why? Because there wasn't a defect in the removal proceedings, right? The IAC was sort of some separate misadvisal about appellate rights that happened outside the removal proceedings. The removal proceedings are key. And if you can — you know, this isn't just my interpretation. This is what defense counsel actually takes a similar position in, in looking at the language of the statute. This is — I'm looking at ER-446, right? This is a brief defense counsel filed below where they write, the text focuses on the deportation proceedings themselves and asks of those proceedings whether they improperly deprived the defendant — excuse me — of the opportunity for meaningful judicial review. That's from their side. So we all agree that what caused — what forecloses the opportunity for judicial review has to be the proceedings themselves. In this case, they did not. In this case, defendant, Mr. Cabrera-Ramirez, perceived due process. There was no prejudice. The IJ made a thorough, detailed analysis. It balanced the equities. And ultimately, it concluded that, you know, the adverse factors, his immutable criminal history that, to be clear, wouldn't have changed whether — regardless of how long he was prepared, the criminal history is what it is. His record is what it is. It was serious. It was escalating. No amount of better testimony or characterizably different would have changed his criminal record. And ultimately, the IJ found that the positive equities maybe weren't as positive as they first appeared on close inspection. Absolutely. You're a minute over your time. I apologize, Your Honor. I respectfully would ask the Court to affirm. Thank you for your time. Thank you. So, to Judge Brown's question, I would point you to the opening brief at 28 to 29, where I did cite some of the Court's case law holding that ineffective assistance of counsel can deprive someone of their due process rights. I think that's well established, starting with Lopez-Chavez — or Reno — as well as Gonzalez-Villalobos, Your Honor. Where are you pointing us to in the opening brief? Page 28 to 29 of the opening brief, Your Honor. Okay. What's your response to the government saying that after Palomar-Santiago, Lopez-Chavez may not be good case law on D2? I didn't really focus on this issue, Your Honor, because it doesn't matter. I think Mr. Cabrera wins regardless, and so I don't think this is an issue the Court needs to reach. I do think Lopez-Chavez survives Palomar-Santiago. I think that the writing in Lopez-Chavez is a little bit unclear whether the Court is actually saying it was excused or this is a situation where it actually satisfies. How, in this case, did the proceedings prevent him from pursuing judicial review? In three ways, Your Honor. First, Ms. Roman's ineffective assistance at the IJ level essentially shielded the immigration judge's discretionary decision by making it appear to be justified because she was ineffective. That led to Mr. Cabrera's poor testimony, and that led to what appeared to be a justified decision by the IJ. That also itself, by the way, was not even reviewable by this Court because the Court doesn't have jurisdiction to review the discretionary denial of a cancellation of removal application. The second way is that before the BIA, assuming that she should have raised the matter of her own ineffectiveness, assuming it was clear enough on the record, she didn't do that. And because she didn't raise her own ineffectiveness before the BIA, this Court would have had no jurisdiction to consider that question. And the third way was before this Court, when the record does support, Your Honor, that she was still representing him, I would point the Court to ER 65, which is trial counsel Below's declaration that he reviewed the entire file of Ms. Roman, her representation file, and didn't find any indication that she told him she was withdrawing from representation. Mr. Cabrera's declaration at ER 72 and his statement when he was put into expedited removal proceedings at ER 93, those are all evidence that she was still representing him and she failed to either let him know she wasn't to allow him to file something on his own behalf or file something for him. Counsel, I know you are way over your time, but I do want to ask you one quick question. Let me know where I can find in the record that Ms. Roman failed to prepare Mr. Cabrera Ramirez. Yes. So she admitted that she didn't at ER 278 to 280 and ER 353, those are both discussions. The first one where she said that she wasn't able to get a copy of the rap sheet, even though she had earlier been provided with it, but she needed more time because she needed a second copy so she could review things with her client. That was after her client had already testified on direct and cross and began his redirect. In ER 353, she said in closing, well, he wasn't lying, it's just that the stuff was very old and I didn't have anything to review with him before he testified. Her actions from ER 299 to 306, where at the final hearing she is very, appears to be unknowledgeable about these police reports, doesn't know what submission the TA is talking about, doesn't know if it has a table of contents, and then she's sort of reading right from it as if she's never read it in ways that impeach her own client. Mr. Cabrera's confusion about his own criminal history at ER 306, 236, 249, and 258, and the fact of his changing testimony, as the IJ found, when he was confronted with these documents, his testimony was different. Can I ask one more? Yes, go ahead. As long as you guys have questions. Okay, great. I think I'm a little confused. I think you've said that the deprivation of judicial review issue doesn't matter here, but doesn't your client have to satisfy D1, D2, and D3? Yes, your honor. I'm sorry if I was unclear. What I'm, what I am intending to communicate is that whether Lopez Chavez has been overruled doesn't affect the outcome here, because Mr. Cabrera satisfies D2 in those three ways, and so whether or not Lopez Chavez, if we can just say, this satisfies D2 because Lopez Chavez, or this satisfies it. All Palomar said was you have to meet all three requirements. Correct. Right? Yes. That's all it said. That's all it said. Yes. Our court had been merging two and three. Exactly. So, so that's not a big deal. That's in the statute. It's not a sea change or anything. So you're saying because of that, Lopez remains good law, because it does address all three. I believe Lopez Chavez does. I think there's some rumblings, and you know, there's an, there's an unpublished, excuse me, decision from this court from a few months ago where they think it doesn't. That frankly doesn't matter, because whether or not, whether or not Lopez Chavez said we excuse it. It's unpublished, so it doesn't have any legal significance. Correct. And whether or not Lopez Chavez does excuse it or not, Mr. Cabrera has satisfied it here. Yeah, and I think that's what we have to focus on. Yes, your honor. All right. Thank you. Thank you, your honors. If there's no to dismiss the information. Thank you. Okay. U.S. versus Ramirez is submitted.
judges: WARDLAW, ALBA, Brown